# United States Court of Appeals for the Federal Circuit

2006-1528

GONZALES & GONZALES BONDS AND INSURANCE AGENCY, INC.,

Plaintiff/Counterclaim Defendant-Appellant,

and

AMERICAN SURETY COMPANY,

Counterclaim Defendant-Appellant,

v.

DEPARTMENT OF HOMELAND SECURITY
and Alberto R. Gonzales, ATTORNEY GENERAL, DEPARTMENT OF JUSTICE,

Defendants/Counterclaimants-Appellees.

Gary A. Nye, Roxborough, Pomerance & Nye LLP, of Woodland Hills, California, argued for plaintiff/counterclaim defendant-appellant and counterclaim defendant-appellant. With him on the brief was David R. Ginsburg.

Catherine Y. Hancock, Attorney, Appellate Staff, Civil Division, United States Department of Justice, of Washington, DC, argued for defendants/counterclaimants-appellees. With her on the brief were Peter D. Keisler, Assistant Attorney General, Jeffrey A. Taylor, and Barbara C. Biddle, Attorneys.

Appealed from: United States District Court for the Central District of California

Judge Florence-Marie Cooper

# United States Court of Appeals for the Federal Circuit

2006-1528

GONZALES & GONZALES BONDS AND INSURANCE AGENCY, INC.,

Plaintiff/Counterclaim Defendant-
Appellant,

and

AMERICAN SURETY COMPANY,

Counterclaim Defendant-
Appellant,

v.

DEPARTMENT OF HOMELAND SECURITY
and Alberto R. Gonzales, ATTORNEY GENERAL, DEPARTMENT OF JUSTICE,

Defendants/Counterclaimants-
Appellees.

_____

DECIDED:  June 15, 2007

_____

Before SCHALL, Circuit Judge, ARCHER, Senior Circuit Judge, and GAJARSA, Circuit Judge.

ARCHER, Senior Circuit Judge.

Gonzales & Gonzales Bonds and Insurance Agency, Inc. ("Gonzales") appeals the order of the United States District Court transferring its claims against the government to the United States Court of Federal Claims.[1]  Gonzales & Gonzales

---

[1]  American Surety Company ("ASC") also appeals the transfer, asserting that the Court of Federal Claims lacks jurisdiction over the government's counterclaim against it.  Because we vacate the transfer order on other grounds, we need not decide ASC's appeal.

<u>Bonds & Ins. Agency, Inc. v. United States</u>, No. CV 03-7093 (C.D. Cal. May 3, 2006). Gonzales's claims are not Tucker Act claims for monetary relief, and thus, the Court of Federal Claims lacks jurisdiction. 28 U.S.C. § 1491(a)(1) (2000). Accordingly, we vacate the transfer order and instruct the district court to dismiss the Fourth Amended Complaint in its entirety.

I

When an alien is detained by the Department of Homeland Security ("DHS"), an immigration bond is posted for the purpose of either securing the temporary release of the alien pending an immigration hearing or ensuring that the alien voluntarily departs the United States on or before a date specified. In posting an immigration delivery bond or voluntary departure bond with DHS, the bonding agent and surety, as co-obligors, guarantee the alien's appearance for an immigration hearing or his voluntary departure.

If there is "[s]ubstantial performance of all conditions imposed by the terms of a bond," DHS will cancel the surety bond, "releas[ing] the obligor from liability." 8 C.F.R. § 103.6(c)(3). Alternatively, if certain conditions occur that obviate the need for the bond, the bond will also be cancelled. 8 C.F.R. § 103.6(c)(2). On the other hand, "when there has been a substantial violation of the stipulated conditions," DHS will declare a bond breached. 8 C.F.R. § 103.6(e). Under the terms of the bond, the amount of the bond is forfeited and payable to the government.

Gonzales is an immigration bond agency with ASC as its surety. DHS determined that Gonzales, as the primary agent for ASC, had breached almost 200 immigration bonds. Gonzales, however, maintains that it did not breach the bonds and

alleges that DHS breached its contractual obligations by refusing to cancel those same bonds.

This case comes before us based on appellant Gonzales's Fourth Amended Complaint. Gonzales allegedly seeks "monetary damages, in the form of cancellation of debt, against DHS who has breached a substantial number of immigration bond contracts with [Gonzales] by failing to comply with its contractual, legal and/or procedural obligations/requirements for the reasons set forth in this Fourth Amended Complaint." Fourth Am. Compl. at 2 (emphasis added). Jurisdiction is asserted "pursuant to the [Little Tucker Act], as this action arises from a number of immigration bond contracts between [Gonzales] and DHS whereby [Gonzales] seeks monetary damages, in the form of cancellation of debt, which debt arises out of DHS' claim that [Gonzales] is indebted to DHS as a result of [Gonzales's] breach of various immigration bonds, each having a value of $10,000 or less." Id.[2]

The government filed a motion to dismiss, arguing that the district court lacked subject matter jurisdiction. In the alternative, the government moved to transfer the case to the Court of Federal Claims. The district court concluded that "the [g]overnment has demonstrated that many . . . of the individual immigration bonds the [g]overnment presently considers breached by [Gonzales] render [Gonzales] indebted to the [g]overnment in excess of $10,000." Gonzales & Gonzales, slip op. at 10. In view of this, the district court determined that it lacked jurisdiction over those claims that

---

[2]    In a prior version of the complaint, Gonzales sought equitable relief requesting the district court determine the rights and duties of the parties with respect to the bond agreements. One of the jurisdictional bases asserted by Gonzales was the Administrative Procedure Act ("APA"), which waives the government's sovereign immunity and provides for judicial review of federal agency decisions in actions seeking relief other than monetary relief. This complaint was dismissed by the district court.

exceeded the Little Tucker Act's $10,000 jurisdictional maximum.  See 28 U.S.C. § 1346(a)(2).  The court thus ordered that all of Gonzales's claims should be transferred to the Court of Federal Claims, because "underlying factual and legal issues are common to bonds where the debt to be cancelled exceeds $10,000 and those where it does not." Id. at 12.

Gonzales appeals the district court's transfer of its claims to the Court of Federal Claims.  We have jurisdiction pursuant to 28 U.S.C. § 1292(d)(4)(A).

II

"We review a district court's decision to transfer a case to the Court of Federal Claims de novo because it is jurisdictional." James v. Caldera, 159 F.3d 573, 578 (Fed. Cir. 1998) (citing Benderson Dev. Co. v. U.S. Postal Serv., 998 F.2d 959, 962 (Fed. Cir. 1993)).

In relevant part, 28 U.S.C. § 1346(a)(2) (the "Little Tucker Act") waives sovereign immunity and grants the district courts original jurisdiction, concurrent with the Court of Federal Claims, over contract claims against the government not exceeding $10,000 in amount.  A district court's jurisdiction does not extend to claims seeking damages greater than $10,000.  Such claims must be brought in the Court of Federal Claims under 28 U.S.C. § 1491(a)(1) (the "Tucker Act").  In order for a claim to be brought under either the Tucker Act or the Little Tucker Act, the claim must be for monetary relief; it cannot be for equitable relief, except in very limited circumstances not at issue

here.  See Doe v. United States, 372 F.3d 1308, 1312 (Fed. Cir. 2004) (citing Lee v. Thornton, 420 U.S. 139, 140 (1975) ("The Tucker Act empowers district courts to award damages but not to grant injunctive or declaratory relief.")).[3]

In this appeal, the government argues that the district court erred in transferring the present case to the Court of Federal Claims because Gonzales's claim is not one for monetary relief.  Thus, the Court of Federal Claims lacks jurisdiction under either the Tucker Act or the Little Tucker Act to hear the case.  The government asserts that instead of transferring the case the district court should have dismissed the entire case because the allegations of the Fourth Amended Complaint failed to state a claim for monetary relief under either the Tucker Act or the Little Tucker Act.

Gonzales responds by asserting that the government's argument is not properly before us because the district court previously rejected the contention that Gonzales was seeking declaratory relief or specific performance, rather than monetary relief, and these rulings have not been appealed.[4]  At oral argument, counsel for Gonzales again argued that we could not reach the issue of whether Gonzales's claim was one for monetary relief.  This is not correct.

"An appellate federal court must satisfy itself not only of its own jurisdiction, but also of that of the lower courts [sic] in a cause under review."  Mitchell v. Maurer, 293 U.S. 237, 244 (1934).  Thus, "even if the issue is not properly raised, this court sua sponte may consider all bases for the trial court's jurisdiction," Consolidation Coal Co. v.

---

[3]  "While limited equitable relief is sometimes available in Tucker Act suits, the equitable relief must be incidental and collateral to a claim for money damages." Bobula v. U.S. Dep't of Justice, 902 F.2d 854, 858-59 (Fed. Cir. 1992) (citing 28 U.S.C. § 1491(a)(2) (1988)).

[4]  See supra note 2.

United States, 351 F.3d 1374, 1378 (Fed. Cir. 2003), or lack thereof. See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). Similarly, we must be satisfied that the transferee court has jurisdiction to hear the case. The district court could properly transfer this case only if the Court of Federal Claims possesses jurisdiction. See 28 U.S.C. § 1631. As stated above, in order for the Court of Federal Claims to have jurisdiction over a breach of contract claim against the government, the claim must be one for monetary relief. In determining whether a claim is for monetary relief, a court must look beyond the form of the pleadings to the substance of the claim. See Brazos Elec. Power Coop. v. United States, 144 F.3d 784, 787 (Fed. Cir. 1998) ("Court of Federal Claims jurisdiction cannot be circumvented by such artful pleading and, accordingly, we customarily look to the substance of the pleadings rather than their form."). Accordingly, whether Gonzales's claims are for monetary relief and within the jurisdiction afforded by the Tucker Act is properly before us.

The district court addressed the nature of Gonzales's claim in response to a motion to dismiss filed by the government. The court described Gonzales's claims as for debt cancellation and concluded that "a claim for cancellation of debt is the functional equivalent of damages." The court further opined that "[i]f the remedy is granted, [Gonzales] will be better off financially, and the Government will be worse off. There is no substantive difference between a plaintiff paying money and the government returning it, and the plaintiff never having to pay it in the first place." As

support for this holding, the district court cited our decision in <u>Brazos v. Electric Power</u>

<u>Cooperative v. United States</u>.[5]

In <u>Brazos</u>, the plaintiff sought recovery of certain funds the government applied to

a prepayment penalty arising from an agreement between Brazos and the government.

144 F.3d at 786. Brazos alleged that the prepayment penalty assessed against it was

improper.

Brazos characterized its claim as one for the equitable relief of a declaration of

rights and an injunction against a federal agency and not for monetary relief. <u>Id.</u> We

disagreed, explaining:

> The net result of the [agency] being ordered not to classify as a
> Prepayment Penalty any of the money it received from Texas Utilities
> would be either the refunding of the Prepayment Penalty to Brazos or the
> crediting of this money towards Brazos's other debt. Cancellation of debt
> owed to the federal government under such circumstances is just as much
> a form of monetary damages for purposes of the Tucker Act as the direct
> payment by the federal government of conventional monetary
> damages. . . . The substance of Brazos's complaint is money damages
> from the federal government. <u>In essence, Brazos is seeking a refund of</u>
> <u>money that it claims was wrongfully paid to the federal government.</u>
> Whether this money is paid directly to Brazos or whether it is credited
> towards other money Brazos owes to the federal government is irrelevant
> to our analysis. Either way, Brazos would be receiving monetary
> damages from the public fisc of the United States which is the touchstone
> of Tucker Act jurisdiction.

<u>Id.</u> at 787 (citations omitted) (emphasis added). Even though Brazos might not have

received any money if it prevailed, because any wrongfully paid funds would simply be

---

[5] The district court also cited <u>Oakbrook Village Associates v. Cisneros</u>, 25 F. Supp. 2d 730, 733 (E.D. La. 1998), in support of its conclusion. This case, of course, is not binding on us. Regardless, it is distinguishable, because Oakbrook sought monetary relief--requesting the Department of Housing and Urban Development to use money it allegedly improperly retained to pay the entirety of Oakbrook's second mortgage. As the district court there noted, "monetary relief [was] clearly the primary objective of [the] suit and the direct consequence if Oakbrook's claims [were] successful." <u>Id.</u> at 733.

used by the government to offset Brazos's other debts to the government, we concluded its claim was one for monetary relief. Thus, the term "debt cancellation" did not refer to the cancellation of any funds purportedly owed and not paid to the government but rather to the offsetting of other debts which Brazos owed the government. An award in the form of an offset of other debt is a form of monetary relief. See Dalton v. Sherwood Van Lines, Inc., 50 F.3d 1014, 1017 (Fed. Cir. 1995) (noting that a contractor may file suit under the Tucker Act to obtain judicial review of a setoff decision). Because Brazos was a case involving either the offsetting of funds or the direct payment of money to Brazos, it fell within the Court of Federal Claims's Tucker Act jurisdiction.

The present case is markedly different. Gonzales's complaint seeks either specific performance of DHS's contractual obligations, pursuant to which the government allegedly would be obligated to cancel the bonds, or declaratory and injunctive relief determining that DHS breached the bonds and precluding the government from collecting the debts owed thereunder. Gonzales is seeking debt cancellation in the true sense of the phrase. If Gonzales prevails on the merits, any purported bond obligations would be cancelled. No monies would be due Gonzales either in the form of cash or credit (such as an offset of other debt). Rather, Gonzales would simply be relieved of any obligation to pay the government under the terms of the immigration bonds.

Contrary to the district court's analysis, there is a substantive difference between a plaintiff seeking the return of money it already paid the government and a plaintiff never having to pay the government in the first place. Simply stated, if the plaintiff in the second scenario prevails, he would not "be receiving monetary damages from the public

fisc of the United States." <u>Brazos</u>, 144 F.3d at 787. Accordingly, Gonzales's debt cancellation claim is not one for monetary relief. Therefore, jurisdiction does not lie in the Court of Federal Claims. [6]

Because the district court improperly transferred this case to the Court of Federal Claims, we vacate the transfer order.

The district court concluded that it "lack[ed] jurisdiction under the [Little Tucker Act] because many of the debts [Gonzales] seeks to have cancelled exceed the $10,000 jurisdictional maximum on recovery." <u>Gonzales</u>, slip op. at 7. In view of the above analysis, however, this rationale for a lack of jurisdiction is incorrect. Rather, the district court lacked jurisdiction under the Little Tucker Act because Gonzales's contract-based claims were not claims for monetary relief.

Accordingly, the district court's transfer order is vacated, and the case is remanded with instructions to the court to dismiss the Fourth Amended Complaint in its entirety.

<u>VACATED and REMANDED</u>

---

[6]  In view of our jurisdictional determination, we need not decide the other issues raised by Gonzales.