**PRAIRIE BAND OF POTAWATOMI INDIANS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 06–921 L.

United States Court of Federal Claims.

Nov. 29, 2011.

Brian J. Leinbach, Los Angeles, CA, for plaintiff.

Michael D. Thorp, United States Department of Justice, with whom was Ignacia S. Moreno, Assistant Attorney General, Washington, DC, for defendant. Anthony P. Hoang, United States Department of Justice, Dondrae Maiden, Gladys Cojocari, Kyschia Patton, and Shani Walker, Office of the Solicitor, United States Department of the Interior, Rebecca Saltiel and Thomas Kearns, Office of the Chief Counsel, Financial Management Service, United States Department of the Treasury, Washington, DC, of counsel.

## OPINION

BUSH, Judge.

The court has before it Defendant's Motion to Dismiss for Lack of Jurisdiction. The government asserts that the tribal trust claims brought in this court are barred by 28 U.S.C. § 1500 (2006). For the reasons stated below, defendant's motion to dismiss is granted and plaintiff's complaint in this court must be dismissed without prejudice.

## BACKGROUND

On December 28, 2006, the Prairie Band of Potawatomi Indians (plaintiff or tribe) filed a complaint (CFC Compl. or CFC Complaint) before this court requesting damages for breaches of trust by the United States. Approximately one year earlier, on December 30, 2005, the tribe filed a complaint in the United States District Court for the District of Columbia also requesting relief related to breaches of trust responsibilities by the United States. *See Prairie Band of Potawatomi Nation v. Kempthorne*, No. 1:05–cv–02496–RCL. The tribe then filed an amended complaint (DDC Compl. or DDC Complaint) in the district court on July 13, 2006. The court must determine whether 28 U.S.C. § 1500, in these circumstances, removes jurisdiction in this court over plaintiff's trust claims. The relevant text of the statute is reproduced here:

The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States....

*Id.*

## DISCUSSION

### I. Standard of Review for a Motion to Dismiss for Lack of Jurisdiction

 In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction, this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814–15, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir.1988). However, plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)), and must do so by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748 (citations omitted). If jurisdiction is found to be lacking, this court must dismiss the action. Rule 12(h)(3) of the Rules of the United States Court of Federal Claims (RCFC).

### II. Relevant Section 1500 Jurisprudence

The United States Court of Appeals for the Federal Circuit has noted that this court must not engage in a *de novo* interpretation of statutes such as § 1500; rather, it should carefully follow the binding precedent in this circuit as to the meaning of the relevant statutory terms:

We reject the court's initial de novo interpretation of [the statute in question] because the Court of Federal Claims may not deviate from the precedent of the United States Court of Appeals for the Federal Circuit any more than the Federal Circuit can deviate from the precedent of the United States Supreme Court. Trial courts are not free to make the law anew simply because they disagree with the precedential and authoritative analysis of a reviewing appellate court.

*Crowley v. United States,* 398 F.3d 1329, 1335 (Fed.Cir.2005). Keeping this instruction firmly in mind, the court reviews relevant authority from the United States Supreme Court and the Federal Circuit. The obvious starting point is the Supreme Court's recent decision in *United States v. Tohono O'Odham Nation,* ––– U.S. ––––, 131 S.Ct. 1723, 179 L.Ed.2d 723 (2011).

### A. Focus on "Substantially the Same Operative Facts"

The Supreme Court in *Tohono* noted that a question as to the proper interpretation of § 1500 had, until this year, remained unanswered: "[W]hether common facts are sufficient to bar a CFC action where a similar case is pending elsewhere." 131 S.Ct. at 1731. *Tohono* answered that question in the affirmative and provided a new formulation of the jurisdictional bar imposed by § 1500:

> Two suits are for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on substantially the same operative facts, regardless of the relief sought in each suit.

*Id.* Thus, the essential question in the application of § 1500 to this case is whether the suit pending in the district court is based on substantially the same operative facts as the case filed here. The "substantially the same operative facts" test, however, requires some discussion.

Since the reformation of § 1500 jurisprudence by the *Tohono* decision, the Federal Circuit has issued one precedential decision which interprets § 1500. *Trusted Integration, Inc. v. United States,* 659 F.3d 1159 (Fed.Cir.2011). In *Trusted Integration,* the Federal Circuit quoted extensively from the *Tohono* decision and made several observations which are instructive. First, as to the purpose of § 1500, the Federal Circuit noted that "the statute was enacted to prevent a claimant from seeking recovery in district court and the Court of Claims for the same conduct pleaded under different legal theories." *Trusted Integration,* 659 F.3d at 1163.

Second, the Federal Circuit provided this summary of the holding in *Tohono:*

> [W]e must: (1) not view § 1500 narrowly; (2) focus only on whether two claims share

the same operative facts and not on the relief requested; and (3) determine whether two suits share substantially the same operative facts by applying the test developed in *Keene Corp.* It is clear, moreover, that our analysis should consider the principles of res judicata to which the Supreme Court pointed.

*Trusted Integration,* 659 F.3d at 1164 (citing *Keene Corp. v. United States,* 508 U.S. 200, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (*Keene*)). In *Trusted Integration,* the Federal Circuit described the *Keene* test for determining whether two suits share substantially the same operative facts in this manner:

> Determining whether two suits are based on substantially the same operative facts "requires a comparison between the claims raised in the Court of Federal Claims and in the other lawsuit." Importantly, the legal theories underlying the asserted claims are not relevant to this inquiry.

*Trusted Integration,* 659 F.3d at 1164 (quoting and citing *Keene,* 508 U.S. at 210, 113 S.Ct. 2035).

As to the relationship between § 1500 jurisprudence and res judicata principles, the *Tohono* court noted that "[c]oncentrating on operative facts is also consistent with the doctrine of claim preclusion, or res judicata, which bars 'repetitious suits involving the same cause of action' once 'a court of competent jurisdiction has entered a final judgment on the merits.'" 131 S.Ct. at 1730 (quoting *Comm'r v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948)). The Supreme Court went on to state that "it is no surprise that [§ 1500] would operate in similar fashion." *Id.* The *Tohono* court concluded that "[r]eading § 1500 to depend on the underlying facts and not also on the relief requested gives effect to the principles of preclusion law embodied in the statute." *Id.*

When the Federal Circuit applied § 1500 in *Trusted Integration,* two counts of the complaint filed in this court fell prey to the jurisdictional bar. Although different legal theories supported claims brought in the district court and the claims brought in two counts of the complaint filed here, these

claims focused on the same conduct. Thus, for one count in the complaint filed in this court, the court concluded that "Trusted Integration was, therefore, alleging that the same conduct gave rise to different claims [filed in the district court and this court] based upon purportedly distinct legal theories." *Trusted Integration*, 659 F.3d at 1165. Similarly, for another count of the complaint filed in this court, "Trusted Integration allege[d] that the same conduct breached both [the government's] fiduciary duty to it and a contract between them." *Id.* at 1167. Because the claims brought in the two courts were based on the same operative facts, these two counts of the complaint filed in this court were barred by § 1500.

For the remaining count of the complaint filed in this court, however, the Federal Circuit ruled that the breach of fiduciary duty claim, brought in the district court, and the breach of a licensing agreement, brought in this court, did not depend on the same operative facts. In essence, the fiduciary duty at issue in the district court suit arose from an alleged implied contract or relationship that was separate and distinct from the written licensing agreement at issue in the suit filed in the Court of Federal Claims. *See Trusted Integration*, 659 F.3d at 1168 (holding that "[n]ot only are these distinct contracts, but their breach requires different conduct"). Although the Federal Circuit conceded that this was a close question, the two claims depended on distinct evidence and were "not based on substantially the same operative facts." *Id.* For this reason, the Federal Circuit concluded that there was not sufficient factual overlap to invoke § 1500 and dismiss that count of the complaint filed in this court.

In its analysis, the Federal Circuit also turned to the principles of res judicata mentioned in the *Tohono* opinion and discussed

the relevance of such principles to the application of § 1500's jurisdictional bar to cases filed in this court. First, the court specified that "the [res judicata] principles that were in force at the time the predecessor to § 1500 was enacted" should be considered, not the modern tests for res judicata or claim preclusion. *Trusted Integration*, 659 F.3d at 1169 & n. 4. Second, the court identified two appropriate tests for claim preclusion: the "act or contract test" and the "evidence test." *Id.* at 1169 (citing *Tohono*, 131 S.Ct. at 1730). The Federal Circuit noted in the appeal before it that neither the "act or contract test" nor the "evidence test" indicated that the breach of licensing agreement claim filed in the Court of Federal Claims was the "same claim" as any claim filed in the district court, and this analysis further supported the court's conclusion that the breach of licensing agreement claim was not barred by § 1500. *Id.* at 1169–70. The Federal Circuit made clear, however, that the *Keene* test for determining whether two suits are based on substantially the same operative facts is the primary tool to be used by this court, and that the consideration of res judicata principles is merely a secondary inquiry that might, in some cases, provide support for the results reached by applying the primary test.[1] *See id.* at 1170 n. 5.

## B. Substantial Overlap in Operative Facts

The *Tohono* court succinctly described the essence of the *Keene* inquiry as a court's determination as to "whether the [plaintiff's] two suits have sufficient factual overlap to trigger the jurisdictional bar." 131 S.Ct. at 1731. Elsewhere in the opinion, the Supreme Court noted that the question before it was "whether a common factual basis like the one apparent in the [Tohono O'odham

---

1. The Federal Circuit's instructions in this regard are quite specific:

We do not adopt these 19th century tests as the standard by which to measure whether two claims arise from substantially the same set of operative facts, nor do we believe *Tohono* directs us to do so. Rather, we test our conclusion that the [breach of licensing agreement claim] is not barred by § 1500 by reference to these tests simply to confirm that our conclusion remains true to the principles encom-

passed in that statutory provision. Thus, the fact that two suits arise from different claims under the 19th century [claim preclusion] tests does not compel the conclusion that the suits do not arise from substantially the same operative facts. If two suits are determined to arise from the same claim under either of these res judicata tests, however, application of the bar of § 1500 is likely compelled.

*Trusted Integration*, 659 F.3d at 1170 n. 5.

Nation's suits suffices to bar jurisdiction under § 1500." *Id.* at 1727. In that case, "the substantial overlap in operative facts between the Nation's District Court and CFC suits preclude[d] jurisdiction in the CFC." *Id.* at 1731.

In precedential cases discussing § 1500, the operative facts presented in the complaints filed in the two courts are those which challenge government conduct. *See, e.g., Tohono,* 131 S.Ct. at 1731 (alleging breaches of fiduciary duty by the United States as trustee of tribal funds and property); *Keene,* 508 U.S. at 203–05, 113 S.Ct. 2035 (seeking compensation from the United States because asbestos litigation against manufacturer allegedly implicated certain liabilities and conduct of the United States); *Trusted Integration,* 659 F.3d at 1164–67 (alleging breaches of contract and various duties arising from contractual and business relationships with the United States); *Harbuck v. United States,* 378 F.3d 1324, 1328–29 (Fed.Cir.2004) (alleging pay discrimination against women in the United States Air Force). The jurisdictional bar in § 1500 cannot be avoided, however, by simply dividing challenges to the same government conduct into two complaints, each seeking recovery under a different legal theory. *See Trusted Integration,* 659 F.3d at 1166 (stating that "since *Keene,* it has been clear that the legal theories asserted before the district court and the CFC are irrelevant to whether the claims arise from substantially the same operative facts"). In other words, if the suits share a "common factual basis," *Tohono,* 131 S.Ct. at 1727, and the same underlying government conduct is challenged in the claims filed in suits before a district court and this court, § 1500 operates as a bar to the claim filed in this court. *See, e.g., Harbuck,* 378 F.3d at 1329 (rejecting the argument that a claim "centered on ... non-selection for promotion" could proceed in the district court, and a claim "centered around ... not receiving the same pay" could proceed in this court, where both complaints contained substantial factual overlap in the discriminatory conduct alleged and presented "the same underlying claim that the Air Force discriminated against women by paying them less than men") (internal punctuation omitted).

## C. Breaches of Fiduciary Duties by the United States as Trustee for Indian Tribes

Many Indian tribes have filed suits in the district courts and in this court alleging that the United States has breached its fiduciary duties as trustee for the tribes. When the suit in this court has been challenged on § 1500 grounds, a comparison of the complaints filed in each court is required. In a large number of cases, this court has found that substantially the same operative facts have been presented in the complaints filed in the district court and this court. *See, e.g., Omaha Tribe of Neb. v. United States,* 102 Fed.Cl. 377, 389–90 (2011); *Yankton Sioux Tribe v. United States,* 84 Fed.Cl. 225, 233 (2008), *aff'd,* 437 Fed.Appx. 938 (Fed.Cir. 2011); *Passamaquoddy Tribe v. United States,* 82 Fed.Cl. 256, 283–85 (2008), *aff'd,* 426 Fed.Appx. 916 (Fed.Cir.2011). None of these decisions is binding precedent in this case, but these cases do indicate that the tribes' attempts to pursue relief in two federal courts for breaches of fiduciary duties by the United States are vulnerable to a jurisdictional challenge brought under § 1500.

More damaging by far to the tribes' litigation efforts is the Supreme Court's decision in *Tohono,* which endorsed the comparison of complaints conducted by this court in *Tohono O'odham Nation v. United States,* 79 Fed.Cl. 645 (2007) (*Tohono I* ), *rev'd,* 559 F.3d 1284 (Fed.Cir.2009), *rev'd,* —— U.S. ——, 131 S.Ct. 1723, 179 L.Ed.2d 723 (2011). In *Tohono I,* a thorough analysis of the complaints filed by the Tohono O'odham Nation in the district court and in this court determined that the complaints presented a substantial overlap in operative facts. *Id.* at 648–52, 656. The factual overlap in the two complaints was summarized in the *Tohono I* opinion:

> Plaintiff has included language in both complaints alleging mismanagement and lack of prudent investment (both complaints include the duties to account, keep adequate records, refrain from self-dealing, preserve trust assets, and invest prudently as to maximize return). Both complaints allege breaches of the same

previously listed duties. It is also undisputed that plaintiff is alleging these breaches in relation to the same trust corpus (lands, buildings, mineral resources, rights in property, and tribal funds). The underlying facts are the same.

*Id.* at 656 (citations omitted).

In *Tohono,* the Supreme Court agreed with this court's analysis, and described the factual overlap between the two complaints in this manner:

> The two actions both allege that the United States holds the same assets in trust for the Nation's benefit. They describe almost identical breaches of fiduciary duty—that the United States engaged in self-dealing and imprudent investment, and failed to provide an accurate accounting of the assets held in trust, for example. Indeed, it appears that the Nation could have filed two identical complaints, save the caption and prayer for relief, without changing either suit in any significant respect.

131 S.Ct. at 1731. Because the two complaints presented substantially the same operative facts, § 1500 barred the suit in this court. *Id.* Although the text of the complaints at issue in this case is not perfectly parallel to the text of the complaints discussed in *Tohono,* § 1500 precedent compels the dismissal of the suit filed in this court, for similar reasons.[2]

### III. Comparison of the Complaints Filed in the District Court and This Court

Defendant points to the similarities in the two complaints, especially the parallels between paragraphs 16, 18–20, and 26 of the DDC Complaint and paragraphs 20, 22–23 and 26 of the CFC Complaint. Def.'s Mot. at 6–7. Plaintiff suggests, to the contrary, that different operative facts are found in paragraphs 18–26 of the DDC Complaint and paragraphs 11–17, 20–25, and 36–37 of the CFC Complaint. Pl.'s Opp. at 7. Unfortunately for plaintiff's cause, the court finds that there is "substantial overlap in operative facts between [plaintiff's] District Court and CFC suits." *Tohono,* 131 S.Ct. at 1731.

The underlying government conduct challenged in the two suits is substantially the same. In both suits plaintiff alleges that the United States failed to adequately perform its responsibilities as trustee. In the DDC Complaint, the factual allegations include these statements:

> [T]here are massive and long-standing problems with the Defendant's administration of Indian trust funds.... [R]eports prepared by the Interior Department's Inspector General, the General Accounting Office and the Office of Management and Budget have documented significant and habitual problems with the management of tribal trust monies. Those reports have also documented a persistent failure to adhere to the duties and obligations the law imposes on a trustee, as well as a consistent pattern of refusing or ignoring directives to correct these problems and a history of inaction and incompetence in the management of these assets. Congress also noted that this has culminated in the Bureau of Indian Affairs' inability to accurately account for trust fund monies, and its inability to even provide the tribal beneficiaries with full and accurate statements of their trust account balances.

DDC Compl. ¶ 19. In the CFC Complaint, the factual allegations include these statements:

> For at least the past several decades, Defendant's accounting for, management of, and exercise of other fiduciary responsibilities and control over Indian trust funds has been thoroughly examined and highly criticized by private entities, various government agencies, Congress and the courts. Problems identified include, but are not limited to, the Defendant's inability to account for funds due to its loss of or failure to keep records, undue delays in making investments, and poor investment decision-making, such as investing in failed financial institutions. The Defendant's continuing widespread and well-documented Indian trust fund mismanagement, and other breaches of trust have affected and continue to affect the Plaintiff's trust as-

**2.** As in *Tohono,* the tribe seeks an accounting from the district court and money damages here.

sets and have caused and continue to cause monetary losses to the Plaintiff.

CFC Compl. ¶ 22.

 A detailed recitation of the factual allegations in these complaints is not necessary. Both suits challenge the same underlying conduct—the government's management failures and breaches of fiduciary duties owed the tribe. As this court has found when comparing similar complaints filed by plaintiff's counsel, *Keene* and its progeny compel the conclusion that the DDC Complaint and the CFC Complaint present substantially the same operative facts. *See, e.g., Winnebago Tribe of Neb. v. United States,* 101 Fed.Cl. 229, 233–34 (2011); *Omaha Tribe,* 102 Fed.Cl. at 389–90. Under *Tohono,* this suit cannot proceed because plaintiff has a "similar case" pending in district court. 131 S.Ct. at 1731.

As for the res judicata tests pointed to in *Tohono* and *Trusted Integration,* the court finds that at least one of these tests would identify the "same claim" in each of the complaints filed by plaintiff. *See Trusted Integration,* 659 F.3d at 1170 & n. 5 (noting that "[i]f two suits are determined to arise from the same claim under either of these res judicata tests, . . . application of the bar of § 1500 is likely compelled"). The two complaints filed by plaintiff address the same trust corpus and the same acts (or inaction) of the United States. *Compare* DDC Compl. ¶¶ 8–9, 12, 14–16 *with* CFC Compl. ¶¶ 11–13, 18–20. Although plaintiff attempts to distinguish the duty to render an accounting from other fiduciary duties and to distinguish the operative facts relevant to distinct fiduciary duties, Pl.'s Opp. at 4–8, in the court's view both suits are founded on the same acts or inaction of the United States. *Cf. Ak–Chin Indian Cmty. v. United States,* 80 Fed.Cl. 305, 319 (2008) ("The nature of Indian trust cases and the government's trust responsibility owed to Indian tribes does not lend itself to a simple delineation or separation of operative facts as they pertain to the government's various duties owed to Indian tribes."). Because the act or contract test shows that the same claim is present in each suit, the principles of res judicata embodied in § 1500 also compel dismissal of plaintiff's suit in this court.

## CONCLUSION

For the foregoing reasons, plaintiff's complaint must be dismissed for lack of jurisdiction, because of the limit on this court's jurisdiction imposed by § 1500. Accordingly, it is hereby **ORDERED** that:

(1) Defendant's Motion to Dismiss for Lack of Jurisdiction, filed June 13, 2011, is **GRANTED;**

(2) The Clerk shall **ENTER** final judgment for defendant, **DISMISSING** the complaint, without prejudice; and

(3) Each party shall bear its own costs.